**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RODNEY E. CUTTS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:11CV1038MLM** |
| | ) | |
| **DAVE DORMIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner

Rodney E. Cutts ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response

to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7. Petitioner

filed a Reply to Respondent's Response and a Supplemental Reply. Docs. 10, 11. The parties have

consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(c). Doc. 9.

**I.**

**PROCEDURAL HISTORY**

Petitioner was charged by Substitute Information in Lieu of Indictment as follows: Count I,

the felony of forcible rape, in that on about August 2, 2006, in the City of St. Louis, Petitioner

knowingly had sexual intercourse with K.W.[1] by the use of forcible compulsion; Count II, the class

C felony of sexual assault, in that on about August 2, 2006, in the City of St. Louis, Petitioner had

sexual intercourse with K.W., knowing that he did so without the consent of K.W.;[2] Count III, the

---

[1]      Although documents before this court identify to the victim by name, the court will
use her initials.

[2]      Count II was in the alternative to Count I. Ex. B1 at 185.

class A felony of domestic assault in the first degree, in that on August 2, 2006, in the City of St. Louis, Petitioner attempted to cause serious physical injury to K.W. by striking her and in the course thereof inflicted serious physical injury to K.W. and K.W. and Petitioner were family or household members in that K.W. and Petitioner were adults who were or had been in a continuing social relationship of a romantic or intimate nature; Count IV, the class B felony of burglary in the first degree, in that on about August 2, 2006, in the City of St. Louis, Petitioner knowingly entered unlawfully in a building located at 1446 Morrison Lane and possessed by K.W. for the purpose of committing Domestic Assault in the first degree therein, and while in such building, K.W., who was not a participant in the crime, was present; and Count V, the class A misdemeanor of stealing, in that on about August 2, 2006, in St. Louis, Petitioner appropriated four hundred and fifty dollars which was in K.W.'s possession and Petitioner appropriated such property without the consent of K.W. and with the purpose to deprive her of it. Petitioner was charged as a prior offender. Resp. Ex. B1 at 185-87.

On October 29, 2007, through October 31, 2007, Petitioner was tried before a jury in the Circuit Court of the City of St. Louis. The testimony at Petitioner's trial was that the victim, K.W., dated Petitioner for five or six months; that they lived together for that entire time; that the relationship descended into arguing, bickering, and fighting; that, eventually, K.W. ended the relationship and took back Petitioner's key to her house; that in the early morning hours of August 2, 2006, Petitioner entered the house through the back door; that K.W.'s children were awake and Petitioner asked to talk to K.W.; that the children told him that she was asleep and not to wake her up; that K.W. awoke when she felt someone kissing on her chest and realized it was Petitioner; that K.W. then screamed asking Petitioner how he got into her house; that K.W. told Petitioner to get out of her house; that Petitioner said he loved and missed her and that he was not going anywhere; that

K.W. sent her children upstairs; that, when Petitioner tried to insert his penis in her, K.W. kicked Petitioner off of her and ran to the back door and then to the front door; that, when she reached for her cell phone, Petitioner grabbed it; that Petitioner then struck K.W. in the eye and she fell to the floor; that K.W. got up and ran to the back door, where Petitioner met her and struck her in the nose; that K.W. again fell to the floor; and that Petitioner ran out of the back door. Resp. Ex. A, Trial Transcript ("Tr.") at 151-58, 189-90.

The testimony was also that K.W. then ran to a neighbor's house and called the police; that police responded but K.W. did not tell them about the sexual acts because Petitioner had not penetrated her; that later that morning K.W. woke up and, seeing the condition of her face, called police; that, when police arrived, K.W. had a swollen eye, her other eye was discolored, and her face was swollen; that she told police about the sexual acts; that K.W.'s young son told the police that Petitioner used a key to get into the house and that he hit K.W.; that the young son, Kareem, said that his brother saw Petitioner take something from K.W.'s purse; that there was blood in various locations inside and outside the residence; that, at the hospital, it was determined that bone fragments around K.W.'s eye and her nose were broken; and that a sexual assault kit was completed.[3] Tr. at 160-61, 200-201, 215.

The trial court granted Petitioner's motion for acquittal on the count of forcible rape and, instead, submitted an instruction to the jury on attempted forcible rape. Resp. Ex. K at 2 n.1. The

---

[3]     K.W. testified that when she was at the hospital she learned that she had "bone fragments all around [her] eye that were broken. They were broken, and then [her] nose was broke, and they said that if [she] even coughed or sneezed, then [her] eye [would] pop out the socket." Tr. at 161. Petitioner disputes that K.W.'s nose was broken and argues that Respondent incorrectly stated in the Response to Order to Show Cause that Petitioner broke the victim's nose and bones around her eye. Doc. 11. In support of his position, however, Petitioner references a report from a CT of K.W.'s facial bones, which report states, among other things, that the findings included "*right medial orbital wall fracture* with air in soft tissue of the right orbit" and "bilateral nondisplaced *nasal bone fracture*." Doc. 11 at 1-2 (emphasis added).

jury found Petitioner guilty of domestic assault in the first degree and acquitted him of all other counts. Having previously found that Petitioner was a prior offender, the court sentenced him to fourteen years incarceration. Resp. Ex. A at 213, Ex. B at 233-36. Petitioner filed a direct appeal. Resp. Ex. D. By decision, dated February 24, 2009, the Missouri appellate court affirmed the decision of the trial court. Resp. Ex. F.

On March 18, 2009, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. H at 3-40. Counsel was appointed and filed an amended motion. Resp. Ex. H at 47-71. By decision, dated January 5, 2010, the motion court denied Petitioner post-conviction relief. Resp. Ex. H at 75-82. Petitioner appealed the decision of the motion court. Resp. Ex. I. By decision, dated November 16, 2010, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. K.

On June 8, 2011, Petitioner filed his § 2254 Petition in which he raises the following issues:

**1.** Petitioner was denied effective assistance of counsel because counsel failed to object to a faulty jury instruction for domestic assault in the first degree;

**2.** Petitioner was denied effective assistance of counsel because counsel failed to object to object to an instruction on domestic assault in the second degree and failed to proffer an alternative instruction on that offense;

**3.** Petitioner was denied effective assistance of counsel because counsel failed to present the testimony of Officer Anthony Page;

**4.** Petitioner is being held in violation of the Fifth and Fourteenth Amendments on the grounds of double jeopardy, collateral estoppel, and res judicata.

Doc. 1.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review

pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2)

"involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529

U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)**.**

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Id.</u> at 411-12. A state-law claim which is raised in

state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner's § 2254 Petition was timely filed.

Petitioner raised the issue of Ground 1 in his direct appeal. Petitioner raised the issues of Grounds 2 and 3 before the Missouri appellate court in the appeal of his post-conviction relief motion. As such, the court finds that Petitioner has not procedurally defaulted Grounds 1-3.

Petitioner acknowledges that he not raise the issue of Ground 4 in either his direct appeal or the appeal of his post-conviction relief motion.[4] He states that he did not do so because he did not

---

[4]     Respondent does not suggest in the Response to Order to Show Cause that Ground 4 was procedurally defaulted even though Petitioner acknowledged in his § 2254 Petition that he did not raise Ground 4 in either his direct appeal or the appeal of his post-conviction relief

know about this issue. Doc. 1 at 11.  Exhibits filed by Petitioner reflect that he did, however, raise the issue of Ground 4 in a "pro se motion in the nature of an application for writ of habeas corpus" while the appeal of his post-conviction relief motion was pending. Doc. 1, Ex. D.  The State court denied this motion, on July 29, 2010, holding that it had previously denied Petitioner's Rule 29.15 post-conviction relief motion; that an appeal of that denial was pending; that it did not have jurisdiction over a petition for habeas corpus; and that it lacked jurisdiction to reopen Petitioner's post-conviction relief proceedings. Doc. 1, Ex. D.  Where a State court dismisses a claim made in a State post-conviction relief motion on the ground that the issue was procedurally defaulted under State law, a habeas petitioner may not raise the defaulted issue in a § 2254 petition. See Heffernan v. Norris, 48 F.3d 331, 333 (8th Cir. 1995) (holding that a federal court cannot consider claims which a state prisoner has procedurally defaulted in state court absent a showing of actual innocence or cause and prejudice).  See also Oglesby v. Bowersox, 952 F.3d 922, 925-26 (8th Cir. 2010).

The State court did address, *alternatively*, Petitioner's claim of double jeopardy and held that it was "meritless as his acquittal of attempted forcible rape [did] not bar his conviction of domestic assault in the first degree, given the disparate elements of the offenses." Doc. 1, Ex. D.  However, *when a state court has clearly expressed that its judgment rests on a state procedural bar, whether it also addressed the merits in the alternative is "of no relevance"*; "'[f]ederal courts do not look at whether state courts have correctly applied their own procedural rules.'" Hunt v. Houston, 563

_____

motion. Doc. 1 at 11.  Rather, Respondent interpreted Petitioner's Ground 4 to include a "sufficiency of the evidence" argument which argument Petitioner did raise before the Missouri appellate court. Doc. 7 at 6.

A federal court has "discretion to consider an issue of procedural default sua sponte." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). See also Cagele v. Norris, 474 F.3d 1090, 1098 (8th Cir. 2007).  Moreover, Petitioner acknowledged his procedural default and took the opportunity to argue that his procedural default of Ground 4 should be excused.

F.3d 695, 703 (8th Cir. 2009) (emphasis added) (citing Nicklassen v. Roper, 491 F.3d 830, 839 (8th Cir. 2007) (quoting Clemons v. Luebbers, 381 F.3d 744, 751 (8th Cir. 2004).[5]

Moreover, to the extent Petitioner contends, in Ground 4, that he did not know of the factual basis for his claim of double jeopardy immediately upon his conviction, this argument is without merit. Certainly, immediately upon his being convicted, Petitioner knew that he was convicted of domestic assault in the first degree and was acquitted of all other counts. See McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990) (holding that "novel circumstances and arguments" may constitute cause to excuse procedural default; "cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals.") (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). In any case, "the 'tools were available' for [Petitioner] to construct the legal argument [of Ground 4] at the time" he filed his direct appeal and at the time he filed his post-conviction relief motion. Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

To the extent that Petitioner relies on State v. Dowell, 311 S.W.3d 832 (Mo. Ct. App. 2010), in support of Ground 4, and claims that he did not know about this case in time to raise its

---

[5]     The Supreme Court holds that where the same act constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there is a violation of the prohibition against double jeopardy is whether each provision requires proof of a fact which the other does not. See Blockberger v. United States, 284 U.S. 299, 304 (1932) (citing Gavieres v. United States, 220 U. S. 338, 342 (1911)). Additionally, the Eighth Circuit holds that the double jeopardy provision of the Constitution does not prohibit prosecution for crimes which involve the same conduct. See Thompson v. State of Missouri, 724 F.2d 1314, 1319 (8th Cir. 1984) ("Felony murder and armed robbery are two different offenses, even though armed robbery is the underlying felony and a lesser included offense of the murder."). As such, even were the court to consider Petitioner's double jeopardy argument on its merits, the court would find it without merit as the State court's consideration of this issue is a reasonable application of federal law and not contrary to federal law. See Williams, 529 U.S. at 412-13.

applicability according to proper State procedure,[6] the facts of <u>Dowell</u> are distinguishable from Petitioner's case. <u>Dowell</u> involved a defendant's being recharged after a court had dismissed the same charge; Petitioner claims double jeopardy, not based on his being recharged, but based on his being charged with multiple crimes with overlapping elements.

In conclusion, the court finds that Petitioner did not properly raise the issue of Ground 4 in accordance with State procedure; that Petitioner procedurally defaulted Ground 4; that Petitioner has not stated cause and/or prejudice to excuse his procedural default of Ground 4; and that, therefore, Petitioner should be denied habeas relief based on Ground 4.[7] <u>See</u> <u>Sweet</u>, 125 F.3d at 1149.

---

[6]    <u>Dowell</u>, 311 S.W.3d 832, was decided after Petitioner filed his post-conviction relief motion.

[7]    Were the court to consider Ground 4 on its merits, the court would find Ground 4 without merit. Petitioner contends that his conviction for domestic assault in the first degree was double jeopardy because he was acquitted of related counts. Petitioner's argument hinges on his allegation that the State failed to prove that he caused serious injury to the victim, which is an element of domestic assault in the first degree, the charge of which Petitioner was convicted. Petitioner did argue, in his direct appeal, that the State failed to prove he caused K.W. "serious physical injury."

The Missouri appellate court first considered that serious physical injury is defined, for purposes of domestic assault in the first degree, as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Resp. Ex. F at 3 (citing Mo. Rev. Stat. §§ 565.072.1, 556.061(28)). The Missouri appellate court then found that the proffered evidence was sufficient to support the jury's finding that the victim suffered serious physical injuries. In particular, the court considered that K.W.'s eye and face were severely swollen; that she was referred to a plastic surgeon for consultation regarding her broken nose; and that, due to broken bones in her nose and face, K.W. could no longer blow her nose or breath normally without surgical intervention. <u>Id.</u> The Missouri appellate court also considered that, to qualify as a serious physical injury under Missouri law, disfigurement need not be permanent; that it need only be "protracted"; and that "protracted" means "something short of permanent but more than [a] short duration." <u>Id.</u> (citation omitted).

First, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. <u>See</u> <u>Poe v. Caspari</u>, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); <u>Higgins v. Smith</u>, 991 F.2d 440, 442 (8th

12

Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." Thus, to the extent Petitioner challenges the Missouri appellate court's interpretation of Missouri law in Ground 4, Ground 4 is not cognizable pursuant to § 2254.

Second, the United States Supreme Court stated in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319. See also Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir.2000)).

Additionally, the Supreme Court holds that, where the same act constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there is a violation of the prohibition against double jeopardy is whether each provision requires proof of a fact which the other does not. See Blockberger v. United States, 284 U.S. 299, 304 (1932) (citing Gavieres v. United States, 220 U. S. 338, 342). As found by the State court, the elements of domestic assault and the charges of which Petitioner was acquitted are disparate. Doc. 1, Ex. D. Further, under federal law, "[i]nconsistent verdicts are not, on their own, sufficient grounds for reversal or a new trial." United States v. Coplen, 565 F.3d1094, 1097 (8th Cir. 2009) (quoting United States v. Whatley, 133 F.3d 601, 601 (8th Cir. 2007)). "[W]hen considering what are considered inconsistent verdicts," the Eighth Circuit holds that a court "must only ask whether the government presented sufficient evidence to support the conviction." United States v. Opare-Addo, 486 F.3d 414, 416 (8th Cir. 2007) (citing Nesbitt v. Hopkins, 86 F.3d 118, 121 (8th Cir. 1996)). See also United States v. Powell, 469 U.S. 57, 67 (1984) (holding that other than determining whether the evidence was sufficient, "no further safeguards are necessary" in cases of inconsistent verdicts). Thus were either the AEDPA standard or the pre-AEDPA standard

# IV.
## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.

---

applied, Petitioner's Ground 4 is without merit. See Williams v. Taylor, 529 U.S. 362 (2000); Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002).

Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## IV.
## DISCUSSION

**Ground 1 - Petitioner was denied effective assistance of counsel because counsel failed to object to a faulty jury instruction for domestic assault in the first degree:**

Petitioner argues, in support of Ground 1, that the jury instruction for domestic assault in the first degree did not comply with the MAI-CR instruction for that offense in that it omitted an element; that Respondent acknowledges that it did not; that Missouri courts are required to comply with MAI-CR instructions; and that the use of the defective instruction resulted in manifest injustice. Doc. 10 at 3. Petitioner further argues that this mishandling of the instruction by his trial counsel supports his claim of ineffective assistance of counsel. Doc. 10 at 2-5. Before the Missouri appellate court Petitioner argued, in support of Ground 1, that the jury instruction for first-degree domestic assault was incomplete and that, had counsel objected, the court would have corrected the error and the outcome of his trial would have been different. Resp. Ex. K at 4.

Prior to addressing Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court held that the two-pronged test established by the Supreme Court in <u>Strickland,</u> as set forth above, was applicable. Resp. Ex. K at 3. Thus, the Missouri appellate court held, in regard to his claims of ineffective assistance of counsel, that Petitioner was required to satisfy both prongs of the <u>Strickland</u> test in order to establish that he received ineffective assistance of counsel. Resp. Ex. K at 3-4.

Upon addressing Ground 1, the Missouri appellate court considered that Mo. Rev. Stat. § 565.072.1 provides that:

> A person commits the crime of domestic assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor.

Resp. Ex. K at 4.

The court then held as follows:

At trial, the State submitted and the trial court provided the jury the following instruction, labeled Instruction No. 7, for first-degree domestic assault:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 2, 2006, in the City of St. Louis, State of Missouri, defendant attempted to cause serious physical injury to [K.W.] by striking her, and
Second, that in the course of such conduct Defendant caused serious physical injury to [K.W.], and
Third, that [K.W.] and defendant were adults who had been in a continuing social relationship of a romantic nature,
Then you will find the defendant guilty under Count III of domestic assault in the first degree.

The State concedes that the jury instruction, as submitted, did not conform to MAI-CR3d 319.73 because it omitted the following paragraph: "Fourth, the defendant (knew) (or) (was aware) of the relationship submitted in paragraph Third."

Resp. Ex. K at 5.

The Missouri appellate court then noted that, pursuant to State law, where there is an applicable MAI-CR instruction and it is not given, the failure to do so constitutes error and the prejudicial effect of such error will be "judicially determined." Resp. Ex. K at 5 (citing Mo. Sup. Ct. Rule 28.02(f)). The court then held:

To prevail on his claim of ineffective assistance of counsel, [Petitioner] must show that he suffered prejudice as a result of the faulty jury instruction. Tilley v. State, 202 S.W.3d 726, 732 (Mo. App. S.D. 2006). An appellate court may find that an erroneous instruction prejudiced a defendant where the instruction excused the State from its burden of proof on a *contested* element of the crime. State v. Roe, 6 S.W.3d 411, 415 (Mo. App. E.D. 1999). Here, the omitted instructional paragraph, which states that the accused was aware of his "continuing social relationship of a romantic or intimate nature" with the victim, did not set forth an element of the offense of first-degree domestic assault. Mo. Rev. Stat. § 565.072.1. Furthermore, [Petitioner's] awareness of his relationship with Victim was not disputed at trial. Indeed, the evidence and argument at trial, presented by the State and the defense, indicated that [Petitioner] knew about the romantic nature of his relationship with the Victim. Point denied.

Resp. Ex. K at 5-6 (emphasis in original).

First, upon considering the issue of Ground 1, the Missouri appellate court applied federal law, as established by Strickland, and concluded that Petitioner was not prejudiced by the

instruction's omission because Petitioner conceded at trial that he knew about his relationship with K.W. and because evidence was presented by the State that Petitioner knew about the relationship. Indeed, defense counsel's opening statement specifically referenced Petitioner's "relationship" with K.W.  Defense counsel also stated that, by January 2006, the victim had invited Petitioner to move in with her; that she gave him a key to her home; and that Petitioner lived there until July 2006. Resp. Ex. A, Tr. at 147.  Furthermore, K.W.'s children identified Petitioner as K.W.'s boyfriend and there was testimony at trial that Petitioner told K.W., after he broke into her home, that he loved her and wanted to be with her and her children. Tr. at 155, 188, 185.  Thus, this court finds that the State appellate court reasonably applied federal law upon determining that Petitioner was not prejudiced by his counsel's failure to object to the faulty instruction on domestic assault in the first degree and that the decision of the Missouri appellate court, in this regard, is not contrary to federal law. See Williams, 529 U.S. at 412-13; Strickland, 466 U.S. at 687-88.  Further, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  As such, the court finds that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2- Petitioner was denied effective assistance of counsel because counsel failed to object to object to an instruction on domestic assault in the second degree and failed to proffer an alternative instruction on that offense:**

In support of Ground 2, Petitioner argues that "the evidence did not support instructing that [P]etitioner acted recklessly"; that reasonably competent counsel in similar circumstances would have objected to there being no evidence to support reckless conduct because the issue wasn't [P]etitioner's mental state, but what degree of injury was done to the victim"; and that, but for counsel's alleged ineffective representation, the jury might have convicted Petitioner of domestic assault in the second degree. Doc. 10 at 5-7.

As stated above, in regard to Ground 1, the Missouri appellate court considered that Strickland was applicable to all of Petitioner's claims of ineffective assistance of counsel. Specifically, upon addressing the issue of Ground 2, the Missouri appellate court considered that Petitioner argued that counsel was ineffective for failing to object to the lesser-included offense instruction for second-degree domestic assault, "which contemplated reckless infliction of serious physical injury" and failing to "submit a lesser-included offense instruction for second-degree domestic assault lowering the degree of harm from serious physical injury to physical injury." Resp. Ex. K at 6. The Missouri appellate court considered that the second-degree domestic assault instruction, which was given in the alternative, defined "serious physical injury" as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Resp. Ex. K at 7. The Missouri appellate court then held as follows:

> [Petitioner] argues that trial counsel was ineffective in not objecting to Instruction No. 8 because the evidence presented at trial did not support an instruction on recklessness. We find that any such objection would have been meritless. "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." Mo. Rev. Stat. § 562.021.4. As the State accurately contends in its brief, there was evidence at trial that [Petitioner] acted purposely or knowingly when he twice struck Victim in the face. Counsel cannot be ineffective for failing to raise a non-meritorious objection. Glass v. State, 227 S.W.3d 463, 473 (Mo. banc 2007).

> Nor was trial counsel ineffective for failing to tender a jury instruction for second-degree domestic assault premised on knowingly causing physical injury. "The failure to give a different lesser-included instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." State v. Johnson, 284 S.W.3d 561, 575 (Mo. banc 2009) (emphasis in the original). Here, the trial court instructed the jury on the greater offense of first-degree domestic assault, and the lesser included offense of second degree domestic assault and the jury found [Petitioner] guilty of the greater offense. Point denied.

Resp. Ex. K at 7.

First, as discussed above in regard to Ground 1, the Missouri appellate court applied federal law as set forth in Strickland to Petitioner's Ground 2. Second, the Missouri appellate court found that because any objection would have been non-meritorious, Petitioner could not establish the prejudice required by Strickland. Indeed, in regard to counsel's failure to object to a jury instruction, the Eighth Circuit holds that a habeas petitioner's constitutional rights are not violated under circumstances where "[e]ven if counsel had objected to the instructions, the [court] would have had no reason based on controlling legal authority to sustain the objection." Fields v. United States, 201 F.3d 1025, 1028 (8th Cir. 2000). Further, the court noted in Fields that no objection is necessary where the instructions as a whole "advise[] [the jury] of the essential elements of the offenses charged." Id. (citing Miles v. Nix, 911 F.2d 146, 148 (8th Cir.1990)). "Even if counsel's failure to object to [a] submitted jury instruction fell below an objective standard of reasonableness," a habeas petitioner must still demonstrate that his defense was prejudiced by the submission by the submission of the jury instruction. Cagle v. Norris, 474 F.3d 1090, 1097 (8th Cir. 2007).

Third, in regard to considering whether Petitioner was prejudiced by counsel's failure to tender an alternative jury instruction, consistent with Strickland, the Missouri appellate court considered that counsel's doing so would not have resulted in a different outcome for Petitioner as he was found guilty of the greater crime of domestic assault in the first degree. The Eighth Circuit held in Nerison v. Solem, 715 F.2d 415, 419 (8th Cir. 1983), that it is harmless error where a court rejected lesser-included offense instructions and the defendant was convicted of the greater offense. See also Cooper v. Campbell, 597 F.2d 628, 631 (8th Cir. 1979). As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. at 412-13; Strickland, 466 U.S. at 687-88; Fields, 201 F.3d at 1028; Nerison, 715 F.2d at 419. Additionally,

the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner should be denied habeas relief on the basis of Ground 2.

Moreover, when considering Petitioner's Ground 2, the Missouri appellate court applied State law in regard to the definition of "serious physical injury." Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." As such, the court finds, to the extent that the Missouri appellate court interpreted and applied State law upon considering the issue of Petitioner's Ground 2, that Petitioner's Ground 2 is not cognizable pursuant to § 2254.

**Ground 3 - Petitioner was denied effective assistance of counsel because counsel failed to present the testimony of Officer Anthony Page:**

In support of Ground 3, Petitioner argues that Officer Page wrote in his report that the victim's injuries were minor and designated the offense as assault third degree; that counsel knew that

the severity of the victim's injuries was an issue; that there is no reason to believe that, if called, Officer Page would have testified about his observations of the victim's injuries; that to convict Petitioner of domestic assault in the first degree, the jury was required to find that he attempted to kill or caused serious physical injury to the victim; and that, had the jury been presented with Officer Page's testimony, it would have found Petitioner guilty of the lesser offense. Doc.10 at 7-10.

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court considered that Petitioner argued that had counsel called Officer Page to testify, he would have testified that "when he responded to Victim's first 911 call on the night of the assault, he deemed the Victim's injuries to be 'minor' and reported the crime as an 'assault 3d.'" Resp. Ex. K at 8. Further, the Missouri appellate court held:

> "As a rule, the selection of witnesses and evidence are matters of trial strategy, and are considered virtually unchallengeable in an ineffective assistance claim" Tinsley v. State, 258 S.W.3d 920, 925 (Mo. App. S.D. 2008), quoting Williams v. State, 168 S.W.3d 433, 443 (Mo. banc 2005). To prove ineffective assistance of counsel for failure to call a witness, a movant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have provided a viable defense. Hutchison v. State, 150 S.W.3d 292, 304 (Mo. banc 2004). "The movant must further establish that the outcome of the case could have been different had the witness testified and that counsel's failure to call the witness was not simply trial strategy." Tinsely, 258 S.W.3d at 925.

> After a careful review of the record, we find ...[that] Officer Page's testimony that the severity of Victim's injuries was not immediately apparent would have been merely cumulative. Victim testified that she did not realize the severity of her injuries until later that morning, explaining, "... once I woke up that morning and saw my face and how bad I was and how I was bruised, I knew it was worse than I thought ... ." Thus, Officer Page's testimony could not have proved anything that was not already before the jury by way of Victim's testimony. See, e.g., State v. Clay, 975 S.W.2d 121, 143 (Mo. banc 1998). An attorney will not be deemed to have been ineffective for failing to present cumulative evidence. See, e.g., Goodwin v. State, 191 S.W.3d 20, 38 (Mo. banc). Moreover, [Petitioner] did not prove that trial counsel's failure to call officer Page was not trial strategy. See, e.g., Bucklew v. State, 38 S.W.3d 395, 398 (Mo. banc 2001). Point denied.

Resp. Ex. K at 8-9.

First, as discussed above, the Missouri appellate court considered that the two-pronged test of <u>Strickland</u> was applicable to Petitioner's Ground 3. Second, as discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. <u>Strickland</u>, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" <u>Hanes v. Dormire</u>, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." <u>Id.</u> The decision whether to call witnesses may be a matter of trial strategy. <u>Hall v. Lubbers</u>, 296 F.3d 685, 694 (8th Cir. 2002); <u>Battle v. Delo</u>, 19 F.3d 1547,1556 (8th Cir. 1994). Further, "[s]trategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." <u>Strickland,</u> 466 U.S. at 590. Significantly, in Petitioner's case, defense counsel did subpoena Officer Page prior to trial. Resp. Ex. B(1) at 165. Thus, it is clear that counsel knew about Officer Page's potential testimony but chose not to call him. As considered by the Missouri appellate court, such a strategic decision by counsel was "virtually unchallengeable." <u>Id.</u> As such, the court finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. <u>See</u> <u>Williams</u>, 529 U.S. at 412-13; <u>Strickland,</u> 466 U.S. at 590, 688-89; <u>Hall,</u> 296 F.3d at 694; <u>Hanes</u>, 240 F.3d at 698; <u>Battle</u>, 19 F.3d at1556. Further, the Missouri appellate court reasonably applied federal law to the facts of

Petitioner's case. As such, the court finds that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

**V.**

**CONCLUSION**

For the reasons stated above, the court finds that Petitioner's Grounds 1, 2 and 3 are without merit and that he has procedurally defaulted Ground 4. Further, the court finds, in the alternative, that Ground 2 is not cognizable pursuant to § 2254 to the extent the Missouri appellate court's decision relied on interpreting and applying State law. As such, Petitioner's § 2254 Petition for habeas relief should be denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirely; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

/s/Mary AnnL. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 19th day of July, 2012.